UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARIO MENDOZA, ET AL. | CIVIL ACTION |
| VERSUS | No. 09-6117 |
| ESSENTIAL QUALITY CONSTRUCTION, INC., ET AL. | SECTION I |

**ORDER AND REASONS**

Before the Court is a motion[1] to dismiss filed by defendant, Harris Builders, L.L.C. ("Harris"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs have opposed the motion.[2] For the following reasons, Harris's motion is **DENIED**.

**BACKGROUND**

Plaintiffs allege that they have not been paid for work that they performed as employees of Harris, Essential Quality Construction, Inc. ("Essential Quality"), and/or Quang "John" Nguyen ("Nguyen") on a construction project referred to as the "Oak Villa project."[3] Plaintiffs allege that they were hired by Harris and Essential Quality "to work as painters, and to float, tape, and finish sheet rock on the Oak Villa project."[4]

---
[1] R. Doc. 6.
[2] R. Doc. 11.
[3] R. Doc. 1, p. 6.
[4] Id. at p. 3.

1

Harris was the general contractor hired to complete the Oak Villa project.[5] Harris hired Essential Quality as a subcontractor on the same Oak Villa project.[6] Plaintiffs state that Nguyen is the principal or manager of Essential Quality.[7]

According to plaintiffs' complaint, Essential Quality and Nguyen "directed plaintiffs work on a daily basis, gave plaintiffs their work assignments and set plaintiffs' hours of work."[8] In addition, "[a] [s]uperintendent for Harris Builders was on the job site at Oak Villa monitoring plaintiffs' work."[9] Plaintiffs claim that Harris, Essential Quality and Nguyen "provided plaintiffs with paint, sheet rock, tape and other supplies to do the job."[10] According to plaintiffs' complaint, plaintiffs were hired by defendants for agreed upon rates of daily pay that were determined by Nguyen and approved by Essential Quality and Harris.[11]

Plaintiffs contend they worked for the defendants from December 2008 through February 2009, but that "defendants did not pay plaintiffs their agreed upon daily rates of pay . . . for most of the days worked."[12] In an attempt to resolve their unpaid wage claims, plaintiffs agreed to meet with Lloyd Harris, a representative of Harris.[13] Plaintiffs claim that at the meeting, Lloyd Harris called the police. The police neither arrested nor detained the plaintiffs.[14]

The plaintiffs claim that they have not been paid for work that they completed in violation of the Fair Labor Standards Act ("FLSA") and the Louisiana Wage Payment Act, LSA-

---

[5] Id. at p. 3.
[6] Id. at p. 3.
[7] Id. at p. 4; R. Doc. 6-3, p. 2.
[8] Id. at 4.
[9] Id.
[10] Id.
[11] Id. at 5.
[12] Id. at p. 6. Elsewhere in the complaint, plaintiffs state that they were only paid once. Id. at 4.
[13] Id. at p. 7; R. Doc. 6-3, p. 3.
[14] R. Doc. 1, p. 6.

R.S. 23:631-32, ("LWPA"). Alternatively, plaintiffs claim breach of contract.[15] Moreover, they allege retaliation under the FLSA, contending that Harris and/or Essential Quality attempted to intimidate plaintiffs into dropping their request for wages by calling the police during the meeting between plaintiffs and Harris.[16] Additionally, plaintiffs allege that Hanover Insurance Company ("Hanover"), as a result of bonds being posted by it, owes plaintiffs certain monies for liens placed against the Oak Villa project pursuant to LSA-R.S. 9:4801.[17]

One of the defendants, Harris, has filed a motion to dismiss plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6), on the ground that Harris was not plaintiffs' "employer" as defined under the FLSA or the LWPA. In addition, Harris moves to dismiss plaintiffs' alternative breach of contract claim pursuant to Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

**I. Standard of Law**

A district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007)("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)); Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true 'raise a right to relief above the

---
[15] Id. at pp. 8-10.
[16] Id. at p. 7.
[17] In order to secure payment of their wages, plaintiffs filed liens against the Oak Villa project. R. Doc. 1, p. 11.

3

speculative level.'" Culliver, 503 F.3d at 401 (quoting Twombly, 127 S.Ct. at 1964-65). This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. See Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. Spivey, 197 F.3d at 774; Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" Cutrer v. McMillan, 308 Fed. Appx. 819, 820 (5th Cir. 2009)(quoting Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir.1986)).

**II. Fair Labor Standards Act**

Harris alleges that it is "not a joint employer, nor does it have any employment or contractual relationship with the plaintiffs."[18] Therefore, Harris claims it is not liable for plaintiffs' wages or penalties under the FLSA.[19] Harris contends that "[p]laintiffs may have been employees of Essential [Quality] and/or Nguyen, but not Harris.[20]

In order to establish a claim for retaliation or failure to compensate under the FLSA, there must first be an employer-employee relationship. The FLSA defines employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An entity "employs an individual under the FLSA if it "suffer[s] or permit[s]" that individual to work. This definition is sufficiently comprehensive to "require its application to many persons and working relationships, which prior to [the FLSA], were not

---

[18] R. Doc. 6-3, p. 4.
[19] Id.
[20] Id. at p. 8. In their answer, Essential Quality and Nguyen deny that they had an employer-employee relationship with plaintiffs. R. Doc. 15, p. 2.

4

deemed to fall within an employer-employee category." Rutherford Food Corp. v. McComb, 331 U.S. 722, 728-29, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947)(quoting Walling v. Portland Terminal Co., 330 U.S. 148, 150, 67 S.Ct. 639, 91 L.Ed. 809 (1947)).

An entity "suffers or permits" an individual to work if, as a matter of "economic reality," the entity functions as the individual's employer. See Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961). Factors considered under the "economic reality" test include: (1) the employer's right to control the work; (2) the worker's opportunity to influence his profit or loss depending on his managerial skill; (3) the worker's investment in equipment and materials; (4) whether the service requires special skills; and (5) the degree of permanence of the working relationship. See Reich v. Circle C. Investments, Inc., 998 F.2d 324 (5th Cir. 1993); Usery v. Pilgrim Equip. Co., Inc., 527 F.2d 1308 (5th Cir. 1976), cert denied, 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed 2d 89. Given the broad range of employment relationships, there are numerous potential factors to consider. However, "the touchstone of 'economic reality' in analyzing a possible employee/employer relationship for purposes of the FLSA is dependency." Weisel v. Singapore Joint Venture, Inc., 602 F.2d 1185, 1189 (5th Cir. 1979). The "final and determinative question" is whether "the personnel are so dependent upon the business with which they are connected that they come within the protection of FLSA or are sufficiently independent to lie outside its ambit." Usery, 527 F.2d at 1311.

Although, as Harris contends, a general contractor/ subcontractor relationship does not establish joint employment, neither does the fact that such relationship exists preclude the possibility that the employees of the subcontractor are also the employees of the general contractor. See Quintanilla v. A&R Demolition, Inc., 2005 U.S. Dist. LEXIS 34033 (S.D. Tex. 2005) aff'd on reh'g, 2006 U.S. Dist. LEXIS 12264 at *4-5 (S.D. Tex. 2006); Zheng Apparel Co.

5

v. Liberty Apparel Co. Inc., 355 F.3d 61, 74-75 (2d Cir. 2003). In fact, common law concepts of employment, such as "'employee' and 'independent contractor' have been specifically rejected as determinants of who is protected by the [FLSA]. The test is not one which allows for a simple resolution of close cases." *Usery*, 527 F.2d at 1311 (internal citations omitted).

Applying the first factor of the economic reality test set forth by Circle C, i.e. the employer's right to control the work, plaintiffs' allegations that they were "jointly hired and employed" by Harris and Essential Quality[21] and that Harris' superintendent monitored their work on a daily basis,[22] suggests that Harris had the right to control the work of plaintiffs. As for the second factor, i.e. the worker's opportunity to influence his profit or loss, plaintiffs allege that their rates of pay were "determined by Quang 'John' Nguyen, and approved by Essential Quality and/or Harris Builders."[23] Such would support a finding that plaintiffs had little ability to influence plaintiffs' profit or loss. Plaintiffs are much more akin to wage earners toiling for a living.[24] With respect to the third factor, i.e. the worker's investment in equipment and materials, the assertion that the defendants "provided plaintiffs with paint, sheet rock, tape and other supplies to do the job"[25] suggests that plaintiffs' investment in materials may have been minimal. Finally, as to the last factors, i.e. whether the service requires special skills and the degree of permanence of the working relationship, plaintiffs have not stated whether or not their jobs involved any special skills, nor have they alleged a specific duration of employment, although plaintiffs have stated that their work was performed over a period of three months.[26]

---

[21] R. Doc. 1, p. 3.
[22] Id. at pp. 3-4.
[23] Id. at p. 5.
[24] See Circle C., 998 F.2d at 328.
[25] Id. at p. 4.
[26] Id. at p. 6.

The foregoing suggests that an employment relationship, as defined by the FLSA, may have existed between plaintiffs and Harris. Although, as Harris argues, plaintiff's allegations also suggest that Essential Quality may have exercised greater control over plaintiffs than Harris, the Court cannot determine at this stage whether this would preclude the possibility of an employment relationship with the other. Accepting all well-pleaded facts as true and liberally construing all factual allegations in the light most favorable to the plaintiffs, it is plausible that Harris was plaintiffs' employer under the FLSA.

**III. Analysis Under the Louisiana Wage Payment Act**

Louisiana courts look to the following, non-exclusive factors to determine whether an individual is an employee for the purposes of the LWPA: (1) whether there is a valid contract between the parties; (2) whether the work being done is of an independent nature such that the contractor may employ nonexclusive means in accomplishing it; (3) whether the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) whether there is a specific price for the overall undertaking agreed upon; and (5) whether the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. Gordon v. Hurlston, 854 So.2d 469, 472 (La. App. 3 Cir. 2003)(citing Hickman v. Southern Pacific Transport Co., 262 So.2d 385 (La. 1972)).

"[I]t is not the actual supervision or control which is actually exercised by the employer that is significant, but whether, from the nature of the relationship, the right to do so exists." Gordon v. Hurlston, 854 So.2d 469, 472 (La. App. 3 Cir. 2003)(quoting Hughes v. Goodreau, 836 So.2d 649, 656 (La. App. 1 Cir. 2002) writ denied, 841 So.2d 793); see also Mack v. CDI

7

Contrs., Inc., 757 So.2d 93, 97 (La. App. 5 Cir. 2000); Howlett v. Halpern, 559 So.2d 21, 23 (La. App. 4 Cir. 1990). The fact that one defendant exercises more control over an individual than another defendant does not preclude an employment relationship between the individual and the second defendant. See e.g., Singleton v. Gulf Coast Truck Serv., 409 So.2d 377, 378 (La. App. 4 Cir. 1982)(finding that a driver was employed by both a lessor and a lessee given the degree of control by the lessee and the fact that payments were made to the driver by the lessor).

As discussed previously, plaintiffs' allegations that they were "jointly hired and employed" by Harris and Essential Quality[27] and that Harris' superintendent monitored their work on a daily basis[28] suggests that Harris had the right to control plaintiffs' work. Considering the other factors set forth in Gordon, plaintiffs allege, albeit alternatively, that defendants and plaintiffs were parties to a verbal employment contract. Second, plaintiffs' claims that Essential Quality and Nguyen "directed [their work on a daily basis, gave [them] their work assignments and set [their] hours of work,"[29] and that Harris' superintendent monitored their work daily, suggests that plaintiffs could not employ nonexclusive means when attempting to accomplish their work. Plaintiff's allegations that Harris approved the plaintiffs' daily rates of pay[30] indicates the work was not for a specific, overall price. Plaintiffs' complaint does not address whether plaintiffs' work was performed according to Essential Quality's own methods, without being subject to the control and direction of Harris, although plaintiffs do state that their work was monitored daily by Harris. As for the last Gordon factor, duration of the employment relationship, plaintiffs merely state that they performed the work on the Oak Villa project over a period of three months.

---

[27] R. Doc. 1, p. 3.
[28] Id. at pp. 3-4.
[29] Id. at p. 4.
[30] Id. at pp. 3, 5.

Considering the foregoing law and facts, and construing all factual allegations in the light most favorable to plaintiffs, the Court finds that plaintiffs have alleged sufficient facts to support a plausible employment relationship between plaintiffs and Harris under the LWPA.

**IV. Breach of Contract**

Harris argues that plaintiffs have failed to plead sufficient facts to establish a contract between plaintiffs and Harris.[31] "A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code Ann. art. 1906. "An obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing, or not doing something." La. Civ. Code Ann. art. 1756. "Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." La. Civ. Code Ann. art. 1927. Oral contracts for employment are enforceable under Louisiana law. See Sill v. Clanton Electric Co., 109 So.2d 64, 65 (La. 1959); Vath v. Gay, 77 So. 2d 519, 519 (La. 1955).

Plaintiffs allege that they entered into a "verbal contract" with defendants and that defendants "jointly hired and employed [plaintiffs] . . . to work as painters, and to float, tape and finish sheet rock on the Oak Villa project" in exchange for "agreed upon daily rates of pay."[32] Plaintiffs also allege that defendants, Harris included, "did not pay . . . their agreed upon daily rates of pay for all days worked."[33] In summary, plaintiffs have alleged that they performed their obligation under a verbal contract to paint and install sheet rock for certain days, and that Harris has not fulfilled its reciprocal obligation to pay their agreed upon wages.

---

[31] R. Doc. No. 6-3, p. 11.
[32] Id. at pp. 3, 5.
[33] Id. at p. 6.

Harris suggests that plaintiffs' pleading a contractual relationship between Harris and Essential Quality excludes the possibility of a contract between Harris and plaintiffs.[34] However, these allegations are not mutually exclusive and it is possible for there to be multiple parties to the same contract. The plaintiffs have set forth factual allegations in support of their breach of contract claim that, if true, would entitle them to relief.

Accordingly, and for the reasons stated above,

**IT IS ORDERED** that Harris's motion to dismiss plaintiffs' FLSA, LWPA, and breach of contract claims pursuant to Fed. R. Civ. P. 12(b)(6) is **DENIED.**

New Orleans, Louisiana, March 2, 2010.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[34] R. Doc. 6-3, p. 11.